UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| PAUL SMITH | CIVIL DOCKET NO. 1:20-CV-00400 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| CITY OF ALEXANDRIA | MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT ("the Motion") [Doc. 22] filed by Defendant, City of Alexandria. For the following reasons, the Defendant's Motion is GRANTED as to the Plaintiff's claims of gender discrimination and retaliation brought under Title VII and corresponding Louisiana anti-discrimination statutes.

### PROCEDURAL HISTORY

On March 3, 2020, Paul Smith ("Smith" or "Plaintiff"), filed suit against his former employer, the City of Alexandria (the "City" or "Defendant"), asserting claims of employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and La. R.S. §§ 23:332 and 23:967. [Doc. 1 ¶ 1]. Plaintiff's claims stem from allegations that the City wrongfully terminated his employment because of his gender and in retaliation for filing a claim of sexual harassment. [Doc. 1 ¶ 15].

On August 13, 2021, the City filed this Motion for Summary Judgment seeking dismissal of all of Plaintiff's claims. [Doc. 22]. Plaintiff filed an Opposition on September 14, 2021, [Doc. 26], to which the City filed a Reply on September 16, 2021.

1

[Doc. 27]. Pursuant to the Court's request [Doc. 31], the City filed a Supplemental Memorandum on October 20, 2021. [Docs. 32]. The Motion is now ripe for ruling.

## BACKGROUND

Prior to his most recent term of employment with the City, Plaintiff had been an employee of the Alexandria Fire Department for almost 32 years. [Doc. 1 p. 3]. Plaintiff served as the Fire Chief for the City of Alexandria for nearly ten of those years before retiring in 2007, when he was appointed by Louisiana Governor Kathleen Blanco as the State Fire Marshal. [Docs. 1 p. 3 and 26-2 p. 33]. In January of 2014, after serving as State Fire Marshal and subsequently as the Superintendent of Fire for Jefferson Parish, Louisiana, Plaintiff left full-time employment and returned to work for the City of Alexandria in a part-time capacity as a SAFEAlex technician. [Docs. 1 p. 3 and 26-2 p. 36].

The SAFEAlex program was an initiative designed by the City of Alexandria to promote interaction between city officials and neighborhood watch groups for the purpose of discovering and remedying crime and other problems throughout Alexandria's neighborhoods and communities. [Doc. 26-2 p. 47-48]. Plaintiff, for his part, was employed as a Fire Safety Liaison for SAFEAlex. [Doc. 26-2 p. 47]. His job entailed, among other things, installing smoke detectors in homes throughout the City. [Doc. 26-2 p. 48].

On May 22, 2019, Plaintiff attended a retirement reception for an Assistant Fire Chief. [Doc. 1 p. 3]. While at the reception, Fire Department employee Debbye Johnson ("Johnson") allegedly approached Plaintiff, stuck her finger in his face "in a

hostile manner," and "loudly shouted" at Plaintiff, stating, "your balls must be as big as they ever were for you to come up in here you mother fucker." [Doc. 1 p. 3,4].

As one might expect given the nature of this interaction, Plaintiff and Johnson knew each other and, in fact, had a personal history encompassing several decades. Debbye Johnson was hired by the City in August of 1983 as a Secretary or a "Fire Records Clerk." [Doc. 22-7 p. 62, 87]. On August 18, 1997, Plaintiff, who was then Chief of the Alexandria Fire Department, terminated Johnson's employment for allegedly requesting additional time off after exhausting all of her sick leave, annual leave, and vacation days. [Doc. 22-7 p. 49-51]. Johnson was then re-hired as a Fire Records Clerk for the City after Plaintiff left the Fire Department and remained in that position from September of 2007 until May of 2014, at which time she became the Fire Chief's Secretary. [Doc. 22-7 p. 40, 10]. Although she was still serving as the Fire Chief's Secretary when she interacted with Plaintiff at the May 22nd reception, she was then suffering from Stage IV cancer. She died approximately four and a half months later. [Doc. 22-1 p. 10].

After leaving the May 22nd retirement reception, Plaintiff reported the events of the day to Human Resources at the advice of his supervisor. [Doc.22-6 p. 9] [Doc. 26-2 p. 56]. The next day, Plaintiff submitted a written memorandum to Human Resources explaining his version of the events that had occurred at the reception. [Doc. 26-2 p. 86]. In response, on May 23, 2019, Johnson was given a "counseling" by her supervisor regarding the incident. [Doc. 1 p. 4]. On June 6, 2019, Plaintiff was terminated from his position as a SAFEAlex technician on the grounds that he had

allegedly made misrepresentations to his supervisor that he was, in fact, an invited guest at the May 22nd reception. [Docs. 1 p. 5 and 22-1 p. 27].

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Louisiana Commission on Human Rights alleging discrimination based on gender and retaliation. [Doc. 1-1 p. 1]. Plaintiff received a right to sue letter from the EEOC dated January 2, 2020, and thereafter filed suit in this Court. [Doc. 1-2 p. 1].

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the non-movant. *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The motion for

summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

"In an employment discrimination case, [the Fifth Circuit] focus[es] on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447 (5th Cir. 1996). Unsubstantiated assertions, conclusory allegations, and speculation are insufficient to satisfy the plaintiff's burden. *Grimes v. Texas Dept. Of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). In response to a motion for summary judgment, it is therefore incumbent upon the non-moving party to present evidence – not just conjecture and speculation – that the defendant discriminated against the plaintiff on the basis of the protected characteristic in question. *Id.*

## DISCUSSION

The Motion seeks summary judgment on each of Plaintiff's claims of gender discrimination, retaliation, and reprisal under Title VII and La. R.S. §§ 23:332 and 23:967. The Court addresses each of these claims in turn.

I. **Gender Discrimination Claim – Title VII**

   a. **Arguments Before the Court**

Plaintiff's allegations of gender discrimination rest on the premise that the City's decision to terminate him was improperly based, in whole or in part, on the fact that he is a male. [Doc. 1 ¶ 15]. Specifically, Plaintiff alleges that he was

5

terminated by the City because he filed a complaint of sexual harassment and hostile behavior against a female. [Doc. 1 ¶ 15]. Plaintiff further alleges that the City failed to properly implement a sexual harassment policy, workplace violence policy, or disciplinary policy that does not discriminate based on gender. [Doc. 1 ¶ 18].

In the Motion, the City seeks summary judgment based on its claim that Plaintiff cannot establish a *prima facie* case of gender discrimination. [Doc. 22-1 p.24]. The City contends that Plaintiff has no direct evidence of discrimination and that he cannot show that he was treated less favorably than any similarly situated female employee. [Doc. 22-1 p. 32]. Additionally, the City asserts that even if Plaintiff could establish a *prima facie* case of gender discrimination, he would not be able to establish a genuine issue of material fact as to whether the proffered reason for his termination, *i.e.*, that he lied to his supervisor, was a pretext for gender discrimination. [Doc. 22-1 p. 34]. Lastly, the City denies that Plaintiff can produce any evidence showing that the City does not have a "viable sexual harassment policy" or that its policies are enforced in discriminatory ways. [Doc. 22-1 p. 36].

In response, Plaintiff contends that he can establish a *prima facie* case of discrimination by proving that he was treated "less favorably than a similarly situated employee." *Wright v. United Parcel Serv., Inc. (Ohio)*, 842 F.App'x 869, 872 (5th Cir.). In this regard, Plaintiff claims that he was treated less favorably than Johnson and that she is a similarly situated employee because they were involved in the same incident. [Doc. 26 p. 12]. Additionally, Plaintiff argues that the City's failure to comply with its Workplace Conduct Policy is evidence of pretext. [Doc. 26 p. 9].

6

In reply, the City maintains that Johnson is not a comparator employee under a Title VII discrimination analysis because she "does not meet any of the legal requirements" to be considered a similarly situated employee. [Doc. 27 p. 3]. Additionally, the City argues that Plaintiff and Johnson are not similarly situated because they were not involved in the "same incident." [Doc. 27 p. 3-4]. In this vein, Defendant implausibly contends that Plaintiff's termination did not arise out of the "same incident" because Plaintiff was terminated for being untruthful about having been invited to the May 22nd reception wherein his interaction with Debbye Johnson occurred. [Docs. 27 p. 4, and 22-1 p. 18].

### b. *Prima Facie* Case

A claim of discrimination can be shown either through direct or circumstantial evidence. *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012), as revised (June 22, 2012) (citing *Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). In the absence of any direct evidence,[1] the plaintiff must use circumstantial evidence to establish a *prima facie* case of discrimination under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).; S*ee also, Turner*, 675 F.3d at 892. To defeat summary judgment using circumstantial evidence, the *McDonnell Douglas* framework requires a plaintiff to show that he: (i) belongs to a protected class; (ii) was qualified for the position; (iii) was subject to an adverse employment action; and (iv) was replaced by someone outside the protected

---

[1] Plaintiff has neither alleged nor submitted to the Court any direct evidence of gender discrimination in response to the Defendant's Motion for Summary Judgment.

7

class or was treated less favorably than other similarly situated employees that are outside the protected class. *Wright,* 842 F.App'x 869, 872.

Here, it is undisputed that Plaintiff is a male, that he was qualified for his position as a SAFEAlex technician, and that he was subject to an adverse employment action when he was terminated. The focus of the Court's inquiry, then, is on the fourth element, *i.e.*, whether Plaintiff can demonstrate that there is a genuine issue of material fact as to whether he was treated less favorably than a similarly situated female employee.[2]

Employees are considered similarly situated when they have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Garcia v. Pro. Contract Services, Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Lee v. Ks. City Rwy. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)). Once similarly situated employees are identified, the Plaintiff must also show that the alleged conduct leading to his adverse-employment decision is "nearly identical" to the comparable history of similarly situated employees who did not receive the same treatment. *Id*. A plaintiff can also show that he was treated less favorably than a similarly situated employee when, "two employees are involved in or accused of the same offense and

---

[2] Plaintiff has neither alleged nor submitted to the Court any evidence that he, "was replaced by someone outside the protected class," the first part of the *McDonnell Douglas* framework's fourth requirement.

8

are disciplined in different ways." *Rohde v. K.O. Steel Castings, Inc.*, 649 F.2d 318, 322 (5th Cir. 1981).[3]

Here, Plaintiff alleges that Johnson is similarly situated and therefore a comparator under the *McDonnell Douglas* framework. The Court disagrees. It is undisputed that Johnson and Plaintiff worked for two different departments of the City—Johnson in the Fire Department and Plaintiff in the SAFEAlex program. [Docs. 22-7 p. 12 and 32 p.1]. It is likewise clear that Johnson and Plaintiff did not share the same job responsibilities, supervisory chain, or violation histories. [Doc. 32 p.1-5]. Additionally, Johnson was a classified, permanent employee, whereas Plaintiff was a non-classified, employee-at-will. [Docs. 22-14 p.1-2 and 32 p.1-3]. As a permanent status employee, Johnson could not be terminated without just cause and certain procedural requirements. [Doc. 32 p. 2]. Plaintiff, on the other hand, was an employee at-will and could be terminated, "at any time for any reason, with or without notice or cause." [Doc, 22-14]. For these reasons, the Court finds that Johnson and Plaintiff are not similarly situated employees under the *McDonnell Douglas* framework.[4] *See Wright*, 842 F.App'x 869, 872.

---

[3]   In *Rohde v. K.O. Steel Castings, Inc.*, the Fifth Circuit found that an executive secretary and a cleaning room foreman that were involved in a physical altercation were similarly situated employees for purposes of a Title VII analysis. The Court noted that in determining whether the employees were similarly situated in this case it was relevant to evaluate whether they were "involved in or accused of the same offense and are disciplined in different ways." In so holding, however, the *Rohde* court stated that differences in the employees' job status or skills would be relevant in evaluating the legitimacy of an employer's reason for the employee's termination.

[4]   Plaintiff argues that he and Johnson are similarly situated because they were involved in the same incident at the retirement reception. Though this is true, Plaintiff and Johnson had different employment classifications and, accordingly, were subject to different disciplinary procedures. As a permanent employee, Johnson's employment was governed by

9

Because the Plaintiff cannot establish a *prima facie* case of gender discrimination, the Court grants summary judgment in Defendant's favor.

## II. Retaliation Claim under Title VII

### a. Arguments Before the Court

Plaintiff also alleges that the City retaliated against him for filing a complaint to Human Resources alleging sexual harassment, activity that is protected by Title VII. [Doc. 1 ¶ 1]. Plaintiff maintains that the City terminated him for filing a complaint, "despite actual knowledge of the sexual harassment and hostile behavior of its employee." [Doc. 1 ¶ 15].

In its Motion, the City argues that Plaintiff's complaint was not protected activity under Title VII and, therefore, could not be considered the basis of a claim of retaliation. [Doc. 22-1 p. 36]. The City claims that the conduct alleged in Plaintiff's complaint cannot be considered sexual harassment that created a hostile work environment because they were "stray remarks based on a personal grudge." [Doc. 22-1 p. 36]. Additionally, the City argues that Plaintiff cannot produce any evidence, other than his own personal belief, to show that retaliation was the cause of his firing. [Doc. 22-1 p. 36-37]. The City also contends Plaintiff's untruthfulness to his supervisor was a legitimate, non-retaliatory reason for his termination and Plaintiff,

---

the State of Louisiana's Fire and Police Civil Service Law. *See* La. R.S. 33:2471, *et seq*. [Doc 32 p. 2]. Plaintiff, on the other hand, was an employee at-will and expressly agreed that a term of his employment was the absence of any pre-release procedures. [Doc. 22-14 p. 1]. The treatment of these two individuals after being involved in the same incident is rationally attributable to their different supervisory structures and employment classifications. There is no evidence that they were treated differently because of their genders.

as an employee at-will, cannot meet his burden of showing that but-for his complaint he would not have been terminated. [Doc. 22-1 p. 37-39].

In his Opposition, Plaintiff argues that although he was an at-will employee, a reasonable juror could nonetheless find that Plaintiff would not have been terminated but-for the complaint he filed. [Doc. 26 p. 14-15]. In support of this, Plaintiff suggests that there is no indication from his employment record or from his supervisor of poor job performance. [Doc. 26 p. 15].

In response, the City reiterates its argument that Plaintiff has no claim of retaliation because the conduct alleged in his complaint was not within the protections of Title VII and there is no evidence that Plaintiff would not have been fired but-for retaliation. [Doc. 27 p. 6].

**b. *Prima Facie* Case**

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (i) he engaged in protected activity; (ii) his employer took an adverse employment action against him; and (iii) there is a causal link between the protected activity and the adverse employment action. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

Protected activity is "opposition to any practice rendered unlawful by Title VII including making a charge, testifying, assisting, or participating in any investigation proceeding or hearing under Title VII." *Ackel v. Nat'l Commc'ns.*, 339 F.3d 376, 385 (5th Cir. 2003). Here, it is undisputed that Plaintiff engaged in protected activity when he filed a complaint with the City's Human Resources Department alleging

11

what he purportedly believed to be sexual harassment. [Doc. 1 ¶ 15]. It is likewise uncontested that an adverse employment action was taken against Plaintiff when he was fired. The Court, therefore, must only determine whether there is a causal link between the Plaintiff's protected activity and his termination.

A plaintiff can establish a causal link between the adverse employment action and protected activity if "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 498, 508 (5th Cir. 2001). A causal link must be shown by proving that the adverse employment decision and the plaintiff's protected activity "were not wholly unrelated." *Medina*, 238 F.3d at 684 (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). However, the only evidence Plaintiff provides in support of his allegation that his termination was related to his protected activity is his own unsubstantiated opinion.[5] [Doc. 26-2 p. 92-93].

The Court also notes that the temporal proximity between an employee's termination and his alleged protected activity can provide evidence of a causal link. Indeed, very close proximity alone may even be sufficient establish a *prima facie* case of retaliation in some instances. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994); *Ganheart v. Brown*, 740 Fed.Appx. 386, 389 (5th Cir. 2018)). However, in such a situation, the Plaintiff has the burden of showing that but-for his

---

[5] When asked in his deposition testimony whether he had any evidence, aside from his personal opinion that he was terminated in retaliation for filing a complaint, Plaintiff answered, "No one told me that, no." [Doc. 26-2 p. 92-93]. Plaintiff's speculation as to why he was terminated is not sufficient summary judgment evidence. *Grimes*, 102 F.3d 137, 140 (5th Cir. 1996).

12

protected activity the adverse employment action would not have been taken. *Id*. The temporal proximity between Plaintiff's filing of his complaint on May 22, 2019, and his termination on June 6, 2019, can certainly be considered evidence of a causal link. [Doc. 1 ¶13, 15]. Plaintiff was, in fact, terminated two weeks after his protected activity. Importantly, however, his June 6, 2019, termination date was also two weeks after: (i) Plaintiff's involvement in a public altercation with another City employee at an official retirement reception; and (ii) his alleged untruthfulness about having been invited to the retirement reception, which was the reason proffered by the City as its legitimate non-retaliatory reason for Plaintiff's termination. Plaintiff has not provided evidence to show that his complaint of sexual harassment, as opposed to his involvement in the events at the May 22nd retirement reception or his supervisor's belief that he had lied, was the but-for cause of his termination.

Accordingly, because the Plaintiff cannot establish a *prima facie* case of retaliation, the Court grants summary judgment in Defendant's favor.

### III.     Remaining State Law Claims – La. R.S. §§ 23:332 and 23:967

Finally, Plaintiff has filed claims under La. R.S. §§ 23:332 and 23:967 alleging gender discrimination and retaliation. [Doc. 1 ¶ 1]. It is well established in the Fifth Circuit jurisprudence that Louisiana's anti-discrimination statutes are "substantively similar" to Title VII, and "Louisiana courts routinely look to the federal jurisprudence for guidance." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Thus, when interpreting Plaintiff's claims under La. R.S. §§ 23:332 and 23:967, it is appropriate to apply a Title VII discrimination and retaliation

13

analysis. *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018); *McCoy*, 492 F.3d at 556; *see also, Carr v. Murphy Oil USA, Inc.*, 269 F. App'x 378 (5th Cir. 2008).

Under these facts and for the reasons stated above, the outcome of the Court's analysis and decision dismissing Plaintiff's Title VII claims applies in the same manner to Plaintiff's analogous state law claims. *McCoy*, 492 F.3d at 556 n. 4 (5th Cir. 2007). Accordingly, summary judgment is granted in Defendant's favor as to Plaintiff's claims under La. R.S. §§ 23:332 and 23:967, and these state law claims are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 22] is GRANTED;

IT IS FURTHER ORDERED that all claims asserted by Plaintiff against the City of Alexandria are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 28th day of October 2021.

*[signature: David C. Joseph]*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE